UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR-09-30011-RAL |
| Plaintiff, | \* | |
| | \* | OPINION AND ORDER ADOPTING |
| -vs- | \* | REPORT AND RECOMMENDATION |
| | \* | AND DENYING MOTION TO SUPPRESS |
| JEFFREY BETONE, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I. INTRODUCTION

Defendant moves (Doc. 47) to suppress statements that he allegedly made to FBI Agents Oscar Ramirez ("Ramirez") and Michele Lakey ("Lakey") on December 23, 2008. Defendant argues that the statements were made involuntarily and in violation of his due process rights under the Fifth Amendment and in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The matter is before the Court on the Report and Recommendation of United States Magistrate Judge, Mark A. Moreno (Doc. 55). After conducting an evidentiary hearing on December 9, 2009, Magistrate Judge Moreno has recommended that the Defendant's motion to suppress the statement as involuntary be denied. The Defendant has not asserted any objections to the Magistrate Judge's recommendation to deny his motion to suppress the statement.

In considering a magistrate judge's recommendation on a dispositive matter, such as a motion to suppress evidence, a district court must make a "de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A *de novo* review requires a district court to make its own determination of disputed issues. See United States v. Portmann, 207 F.3d 1032, 1033 (8th Cir. 2000).

The Court has conducted a *de novo* review of the record, including the transcripts of the evidentiary hearing on Defendant's motion to suppress the statement (Doc. 56).

## II. FACTS

On February 11, 2009, Defendant Jeffrey Betone ("Betone") was charged with three counts of sexual abuse, in violation of 18 U.S.C. §§ 2242(2), 2242(1), 2246(2)(A), and 2246(2)(B). The indictment alleges that Betone engaged in a sexual act with a victim incapable of declining participation on or about March 9, 2005, and also alleges that Betone engaged in a sexual act with a second victim by threat on or about May 5, 2008.

Prior to being charged, Betone traveled on his own to the federal building located in Pierre, South Dakota, where he was interviewed by FBI Agents Ramirez and Lakey on December 23, 2008, beginning at approximately 11:11 a.m. Ramirez testified at the motions hearing that he told Betone that he was not under arrest and he was not going to be arrested immediately after the interview. (T. 13).[1] Ramirez also advised Betone that the interview was completely voluntary, that Betone could stop the interview or ask the interviewing agents to stop at any time, and that Betone could leave the interview room or ask the interviewing agents to leave at any time. (T. 13). Finally, Ramirez explained that the doors, though closed, were unlocked. (T. 14). Betone confirmed that he understood each of the advisements made by Ramirez. (T. 17).

After obtaining biographical and background information, including that Betone had completed two years of college, Ramirez questioned Betone about the accusations made against him by one of the alleged victims. At approximately 11:19 a.m., Betone was asked and agreed to provide a buccal swab. Betone initialed and signed a consent to search form prior to providing the sample. (T. 16-17).

Ramirez asked Betone about another alleged victim and then advised Betone of the accusations made against him. At approximately 11:44 a.m., Ramirez asked Betone to provide a summary statement. During the taping of the summary statement, Ramirez and Betone initially spoke about the first victim, with whom Betone admitted having oral sex. Ramirez then initiated questioning regarding the second alleged victim. At 11:56 a.m., Betone requested that the tape recording cease in order for him to take a break, which he then did. (T. 21). The recording reconvened at 12:04 p.m., after which Betone spoke about the second alleged victim, with whom

---

[1] Any references to the transcript will be "T" followed by the page number or numbers.

2

Betone then admitted to having consensual sex. Ramirez testified that he told Betone that he may want to contact Betone in the future. Betone responded that he first wanted to contact an attorney. (T. 25). At no time did Ramirez or Lakey administer Miranda warnings. The interview ended at 12:16 p.m.

## III. DISCUSSION

### A. Miranda Violation

Betone has moved to suppress his statement, arguing that it was obtained in violation of his constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966).

Although Ramirez did not read Betone his Miranda warnings prior to obtaining his confession, "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" See United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). In determining whether a custodial investigation occurred, this Court must conduct an objective custody analysis. See Stansbury v. California, 511 U.S. 318, 323 (1994) (Supreme Court states "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). In this analysis, the Court considers the totality of the circumstances, and ultimately decides whether a reasonable person in the defendant's position would have considered his freedom of action restricted to the degree associated with a formal arrest. LeBrun, 363 F.3d at 723 (citing Feltrop v. Bowersox, 91 F.3d 1178, 1181 (8th Cir. 1996)). The Court takes into account the defendant's age, work experience, and education, as well as the circumstances surrounding the interview. Surrounding circumstances which are relevant to the Court's objective custody analysis include whether the defendant voluntarily acquiesced to the law officer's request for an interview, whether the officers told the defendant that he was free to leave and would not be arrested, whether the defendant's freedom of movement was constrained during the interview, and whether the officers ultimately arrested the defendant at the end of the interview. See United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990) (providing non-exhaustive list of factors relevant to the custody evaluation, none of which are necessarily dispositive).

3

As is required by 28 U.S.C. § 636(b)(1), this Court has conducted a *de novo* review of the record. In completing the objective custody analysis, the Court looked to the surrounding facts and determined that the facts do not support a finding that there has been such a restriction on Betone on December 23, 2008, as to render him in custody. Therefore, for the following reasons, this Court finds that the statements were not obtained in violation of Miranda.

Betone drove with his parents to the federal building voluntarily, a factor weighing against custody. (T. 10). The Eighth Circuit has reasoned that when a defendant has ridden to the federal building with law enforcement for an interview, he is "dependant on the authorities for transportation from the federal building," and thus, there is indicia that the defendant's freedom to depart has been restricted. LeBrun, 363 F.3d at 723 (citing United States v. Hanson, 237 F.3d 961, 965 (8th Cir. 2001)). On the other hand, when the defendant comes to the police station on his own, the defendant can more easily depart without restriction, weighing against custody. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (not in custody where defendant walks two blocks to police station subsequent to officer calling); LeBrun, 363 F.3d at 723 (not in custody where defendant is driven in frontseat of unlocked car to police station for interview); cf. Hanson, 237 F.3d at 965 (in custody where defendant is driven in backseat of locked police car to police station for interview). Betone's voluntary arrival for the interview weighs against a finding that he was in custody during the interview.

The main interviewing officer, FBI Agent Oscar Ramirez, testified that at the onset of the interview he told Betone that Betone was not under arrest, was not going to be arrested immediately following the interview, and Betone could stop the interview or ask the interviewing agents to stop at any time. (T. 13). Ramirez further testified that he informed Betone that he could leave the interview room or ask the interviewing agents to leave at any time. (T. 13). This manner of beginning an interview resembles circumstances in Eighth Circuit decisions holding that an interview was non-custodial, on the basis that a reasonable person in the defendant's position would not think himself constrained after being given this type of information. See United States v. Galceran, 301 F.3d 927, 929 (8th Cir. 2002); Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998). In both Galceran and Thatsaphone, the interviewing officer advised the defendant that the interview was voluntary, that he was not under arrest, and that he was free

4

to leave at any time. Even when an officer neglects to advise the defendant that the interview was voluntary and he was free to leave, the Eighth Circuit has found that an interview may be non-custodial. See Feltrop v. Bowersox, 91 F.3d 1178, 1182 (8th Cir. 1996).

Also weighing against a determination that Betone was in custody is the fact that the Defendant was not arrested at the conclusion of the interview. The lack of a defendant's arrest is a "very important factor weighing against custody." Galceran, 301 F.3d at 931. In the circumstances where the defendant was advised that he was free to leave and would not be arrested after the questioning, the pendulum swings strongly in the direction of non-custody when the defendant is then actually free to go at the end of the interview.

After reviewing the totality of the circumstances, including Betone's education, age, and legal training, this Court finds that Betone was not in custody when he made his statements, and therefore, Miranda was not violated.

### B. Voluntariness

Betone argues that the statements made to Ramirez and Lakey on December 23, 2008 were involuntary and thus should be suppressed. Magistrate Judge Moreno found that the Government had sustained its burden of proof and that Betone's statements to Ramirez and Lakey were voluntary under the Fifth Amendment.

The government must prove by a preponderance of the evidence that the defendant's statement made to police was voluntary. United States v. Astello, 241 F.3d 965, 966 (8th Cir. 2001). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (quoting Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir.) cert. denied, 534 U.S. 924 (2001)). The Court looks at the totality of the circumstances in determining whether a statement was made voluntarily. Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001). In applying the totality-of-the-circumstances analysis, the Court focuses on the conduct of the agents and a defendant's capacity to resist pressure to confess, considering the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. See LeBrun, 363 F.3d at 726. Factors which the Court may weigh in determining whether a statement is

5

voluntary include the prolonged nature of the questioning, LeBrun, 534 U.S. at 726; the defendant's subjective understanding of his Miranda rights, Simmons, 253 F.3d at 1133-34; the age of the defendant, his lack of education, or his low intelligence, United States v. Gallardo-Marquez, 253 F.3d 1121, 1123-24 (8th Cir. 2001); the defendant's prior contact with law enforcement, Gallardo-Marquez, 253 F.3d at 1124; and the use of physical punishment such as deprivation of food or sleep, Hall v. Wolff, 539 F.2d 1146, 1150-51 (8th Cir. 1976).

The Court has conducted a *de novo* review of the record, as required by 28 U.S.C. § 636(b)(1). Throughout the analysis, the Court evaluated whether the facts surrounding the interview demonstrate that the conduct of the officers overbore Betone's will and capacity for self-determination. Considering all of the factors, the Court cannot find that the officers overbore Betone's will and capacity for self-determination.

The Court has considered the questioning tactics and other details of the interview in applying the totality-of-the-circumstances test for voluntariness. Ramirez testified that prior to conducting the interview, he advised Betone of the Griffin warnings, at which time he explained to Betone that we was not under arrest, was not going to be arrested immediately following the interview, and was free to leave at any time. (T. 13). Ramirez advised Betone that he could stop the interview at any time and leave the interview room or ask the interviewing agents to leave. (T. 13). Betone was also informed that the doors to the interviewing room were unlocked. (T. 14).

The facts of the present case are analogous to those surrounding the interrogation in Thatsaphone, 137 F.3d at 1043, a case where the interviewing detective told the defendant that he was not under arrest and would not be placed under arrest that day. The detective further told the defendant that the door to the interviewing room was closed but unlocked, making it so the defendant was free to leave for breaks. Id. In Thatsaphone, the Eighth Circuit found that the detective used no improperly coercive questioning tactics. Id. Similarly here, the conduct of the interviewing agent, Ramirez, did not rise to a level that overbore Betone's will. After affirming that Betone understood the nature of the interview, he asked questions regarding two separate individuals. Before Betone provided a recorded summary statement, Ramirez advised Betone of his Griffin warnings for a second time. (T. 21). A review of the record supports the conclusion

that none of the questioning tactics utilized by Ramirez qualify as coercive police activity that would overbear Betone's will.

In its determination of voluntariness, a court is to consider the characteristics of the accused. See Tippitt v. Lockhart, 859 F.2d 595, 597; United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). In an effort to determine the defendant's ability to resist pressure, courts take into account the person's age, years of formal education, intelligence level, and prior experience with law enforcement. See Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001) (noting that "one of the key concerns in judging whether confessions were involuntary . . . [i]s the intelligence, mental state, or any other factors possessed by the defendant that might make him particularly suggestible").

At the time of the interview, Betone was a junior in college, and affirmed that he could read and write the English language. (T. 15). There is no evidence of Betone's prior involvement with the criminal justice system. The Eighth Circuit has deemed a confession voluntary where an 18-year-old defendant had completed the 11th grade and was able to understand what was said throughout the interview. Astello, 241 F.3d at 968.

Considering all of the circumstances and factors surrounding Betone's statement, this Court concludes that the statements made by Betone were voluntary and the agents' conduct and interviewing tactics did not overbear Betone's free will and self-determination.

Based upon the foregoing, it is hereby

ORDERED that the report and recommendation (set forth orally on the record and at Doc. 55) is adopted. It is further

ORDERED that Defendant's Motion to Suppress Statements (Doc. 47) is denied.

Dated January 27, 2010.

BY THE COURT:

_____
ROBERTO A. LANGE
United States District Judge